UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMAIN PELLERIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INPUT OUTPUT GLOBAL, INC., a Wyoming corporation (formerly Delaware); INPUT OUTPUT GLOBAL SINGAPORE PTE. LTD, a Singapore corporation; INPUT OUTPUT HK LIMITED, a Hong Kong corporation; IOHK USA LLC, a Wyoming limited liability company; and DOES 1-200, inclusive,<br><br>Defendants. | Case No.: 25-cv-01952-BTM-SBC<br><br>**ORDER DENYING MOTION TO REMAND (ECF NO. 10); GRANTING IN PART MOTION TO CHANGE VENUE (ECF NO. 4); AND DENYING MOTIONS TO STRIKE AND PRECLUDE (ECF NOS. 10(2) & 24)** |

Pending before the Court are (1) Plaintiff's motion to remand to state court, (2) Defendants' motion to change venue, and (3) Plaintiff's motions to strike and preclude.  For the reasons stated below, the motion to remand is denied, the motion to change venue is granted in part, and the motions to strike and preclude are denied.

## BACKGROUND

Plaintiff's state court complaint alleges the following facts.  Plaintiff was hired in February 2020 as Chief Technology Officer (CTO) of Defendant Input Output Global (IOG), Inc.  On November 1, 2020, IOG granted Plaintiff a Phantom Stock Unit (PSU) Plan Award—granting Plaintiff one percent of the company as a performance incentive.  The Plan Award was governed by a contract (the "PSU Agreement").  Under the PSU Agreement, Plaintiff would be entitled to compensation in the event (1) of a change in control of IOG or (2) IOG declared a cash dividend.  Plaintiff was hired as CTO of IOHK USA LLC in February 2023.

Defendants grew in value while Plaintiff was CTO.  According to Plaintiff, Defendants systematically restructured its holdings and distribution system to reduce the value of the PSUs.  Thus, Plaintiff alleges, he was not properly compensated for his PSUs as contemplated by the PSU Agreement.  Defendants then sought to have Plaintiff waive his PSU rights in exchange for a salary increase and bonus.

Plaintiff agreed to do so but then properly revoked that agreement.  After he revoked the agreement, Defendant retaliated against Plaintiff by, among other things, (1) cutting off his computer access, (2) removing him from a meeting, and (3) discussing with employees Plaintiff's employment status.

On July 25, 2025, Plaintiff filed a complaint in California Superior Court, San Diego County, asserting eleven causes of action.  The complaint names four defendants:  IOG, IOG Singapore, Input Output HK, and IOHK USA.  On July 31, 2025, Defendants filed a notice of removal.

Defendants' notice of removal claims that this Court has diversity jurisdiction.  The notice alleges that Plaintiff is a California citizen; IOG is a Wyoming and

Colorado citizen; IOHK USA is also a Wyoming and Colorado citizen; and that no defendant is a California citizen. The declaration submitted with the notice by Defendants' attorney, Bryan Benard, clarifies that Input Output HK "is a corporation incorporated in Hong Kong with its principal place of business in Hong Kong" and that IOG Singapore is not known to be affiliated with Defendants. However, the civil cover sheet submitted with the notice states that the plaintiff is a California citizen, that the defendant is a citizen of another state, and that the defendant is either incorporated in California or has its principal place of business in California.

## DISCUSSION

### 1. The Defendants have established diversity jurisdiction.

Plaintiff's motion to remand claims that the Defendants have failed to establish diversity jurisdiction. Plaintiff argues that the civil cover sheet contradicts diversity jurisdiction and that the notice of removal fails to establish the citizenship of Input Output HK and IOG Singapore.

"[I]n a case that has been removed from state court to federal court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction, the proponent of federal jurisdiction--typically the defendant in the substantive dispute--has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). 28 U.S.C. § 1332 requires complete diversity between the parties. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam) ("Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000.").

The Court finds that the initial notice of removal did not establish the citizenship of Input Output HK and IOG Singapore. However, the Court need not resolve whether that notice established diversity of citizenship. "In the Ninth Circuit, a party may amend its allegations of jurisdiction pursuant to Section 1653 at any time,

not just within the original thirty-day period for removal." *Arias v. Safariland, LLC*, No. 19-cv-00522-SVW-SHK, 2019 U.S. Dist. LEXIS 90961, *5 (C.D. Cal. May 28, 2019); *accord Kacludis v. GTE Sprint Communications Corp.*, 806 F. Supp. 866, 869 (N.D. Cal. 1992) ("In this circuit, as in every circuit court that has dealt with the question elsewhere, defects in form of a removal petition are amendable at any time, not just within the original 30-day period for removal.").

The Defendants have filed an amended notice of removal establishing that the Plaintiff is either a California or Texas citizen; IOG is a Wyoming and Colorado citizen; IOHK USA is a Wyoming and Colorado citizen; IOG Singapore is a Singapore citizen; and Input Output HK is a Hong Kong citizen. The amended notice is proper, *see, e.g.*, *Anderson v. Serenity Gathering, LLC*, No. 16-cv-02802-GPC-KSC, 2017 U.S. Dist. LEXIS 7089, *8 (S.D. Cal. Jan. 18, 2017) (citing Ninth Circuit cases allowing amendment where the original notice of removal failed to adequately list the citizenship of every party), and establishes complete diversity between Plaintiff and Defendants. There is no dispute nor question that the amount in controversy exceeds $75,000.

The Court has subject matter jurisdiction, and the remaining arguments for remand are rejected.[1] Plaintiff's motion to remand is denied. Plaintiff's motions to strike and preclude consideration are denied as meritless. (ECF Nos. 10(2) & 24).

**2. The parties agreed to litigate claims related to the PSU Plan in Wyoming.**

Defendants' motion to change venue claims that the parties agreed to litigate any claims related to the PSUs in Wyoming state or federal court. Specifically, the PSU Agreement provides that the PSU award is "subject to the terms, conditions, and

---

[1] The Court notes that "*de minimis* procedural defect[s]," such as a failure to provide the state court complaint, are "curable even after expiration of the thirty-day removal period." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013).

restrictions set forth in this Agreement and the Plan." The Plan's venue provision, Section 17(f), states as follows:

> All action(s) or litigation arising out of or relating to the Plan must be commenced and prosecuted in a state court whose jurisdiction includes Wyoming. Participants in the Plan are deemed to have consented and submitted to the personal jurisdiction over them of any federal or state court whose jurisdiction includes Wyoming in respect of any such action(s) or litigation, and also to have consented to service of process upon them with respect to any such action(s) or litigation by registered mail, return receipt requested, and by any other means permitted by rule or law.

At the outset, the Court notes that the venue provision in the Plan does not require a transfer to the District of Wyoming. The provision requires actions related to the Plan to be commenced "in a *stat*e court whose jurisdiction includes Wyoming." (emphasis added). Federal courts do not transfer cases to state courts. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013) (explaining that the statute allowing federal courts to transfer cases applies to "the subset of cases in which the transferee forum is within the federal court system"). Instead, where a contractual forum selection clause calls for the case to proceed in a state court, federal courts treat a motion to transfer under 28 U.S.C. § 1404(a) as a motion to dismiss for *forum non conveniens*. *See Cycle City, Ltd. v. Harley-Davidson Motor Co.*, 81 F. Supp. 3d 993, 1000 (D. Haw. 2014) ("Where a party moves to transfer based on a forum selection clause that points to a state court, the court will treat the party's motion to transfer as a motion to dismiss.").

Federal courts enforce valid forum selection clauses "in all but the most exceptional cases." *Atl. Marine Constr.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). In a case with a valid forum selection clause, the burden is on the plaintiff to show "why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63-64. When analyzing whether

dismissal is warranted under a valid forum selection clause, "a district court may consider arguments about public-interest factors only." *Id.* at 64. But those factors will rarely override a valid forum selection clause. *Id.* Thus, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Plaintiff opposes the enforcement of the Plan's forum selection clause on three bases: first, that he never read it; second, that it is invalid under California Labor Code § 925(a); and third, that California public policy weighs against it. The Court holds each argument meritless and will enforce the clause.

The Plan is clearly referenced and incorporated in the PSU Agreement. It should have been clear to Plaintiff before he signed the PSU Agreement that the Agreement was "subject to the terms, conditions, and restrictions set forth in . . . the Plan." That is the plain language of the agreement—on the first page. Plaintiff's claim of ignorance is an insufficient basis to defeat the enforcement of the Plan's forum selection clause. *See Westrock CP, LLC v. Ming's Res. Corp.*, No. 21-cv-00929-MO, 2022 U.S. Dist. LEXIS 4432, *3-4 (D. Or. Jan. 7, 2022) ("The mere fact that Ming's Resource did not adequately understand or consider the forum selection contract does not render the clause unenforceable."); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (Cal. Ct. App. 2022) ("If an offeree objectively manifests assent to an agreement, the offeree cannot avoid a specific provision of that agreement on the ground the offeree did not actually read it."); *Portnov v. Carnival Corp.*, No. 14-cv-02887-PSG, 2014 U.S. Dist. LEXIS 171708, *6-9 (N.D. Cal. Dec. 11, 2014) ("That Portnov failed to read it or was unaware of its contents does not suggest fraud or unreasonable conduct that would render the contract—or the arbitration provision contained within—unenforceable under the law."); *Leong v. Myspace, Inc.*, No. 0-8366 AHM, 2011 U.S. Dist. LEXIS 155117, *13 (C.D. Cal. Mar. 11, 2011) ("[I]t is not a controversial proposition that one may be bound by a term of a contract even when one chooses not to read that term."); *Ottiano v. Prof'l Sports Authenticator*, No. 09-00025-PHX, 2009 U.S. Dist. LEXIS 103326, *4 (D. Ariz. Nov. 2, 2009) ("Under

California law, even forum selection clauses in contracts of adhesion that are not read are enforceable as long as the clause provides adequate notice that the party was agreeing to the jurisdiction cited in the contract."); *Hunt v. Super. Ct.*, 81 Cal. App. 4th 901, 908 (Cal. Ct. App. 2000) ("[T]he forum selection clause . . . in an adhesion contract is enforceable even though the defendant did not actually read it as long as the clause provided adequate notice . . . that he was agreeing to the jurisdiction cited in the contract." (internal citations omitted)).  Here, Plaintiff had clear notice of the fact that this PSU Agreement was subject to the conditions in the PSU Plan, one of which was the forum selection clause.

Second, contrary to Plaintiff's argument, California Labor Code § 925(a) is inapplicable here.  Section 925(a) precludes employers from requiring "an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . "[r]equire the employee to adjudicate outside of California a claim arising in California."  Here, however, neither the PSU Agreement nor the forum selection clause were a "condition of [Plaintiff's] employment." *See Dalavai v. Amazon.com, Inc.*, No. 25-CV-1841 JLS (AHG), 2026 U.S. Dist. LEXIS 58290, *9 (S.D. Cal. Mar. 19, 2026) ("The consequence of failing to sign the Agreement, however, would not be losing his job—but rather losing out on the award of equity. Plaintiff's acquiescence to adjudication in Washington was therefore not a 'condition of employment,' and does not violate § 925."); *Patel v. SAP Am., Inc.*, No. 25-cv-00608-NW, 2025 U.S. Dist. LEXIS 125540, *6-8 (N.D. Cal. July 1, 2025) (finding Section 925 inapplicable where the employee could reject the agreement while maintaining his employment); *Montoya v. Ariba Inc.*, No. 22-cv-01861-FWS-JDE, 2023 U.S. Dist. LEXIS 37309, *26-27 (C.D. Cal. Mar. 6, 2023) (ruling that because the plaintiff was not required to agree to "incentive compensation," Section 925 was inapplicable); *Cordero v. C.R. England, Inc.*, No. 20-2675 JGB, 2021 U.S. Dist. LEXIS 126846, *4 (C.D. Cal. Apr. 30, 2021) (ruling that Section 925 did not apply where the plaintiff's employment was not "conditional on acquiescence" to a

forum selection clause).

Plaintiff's reliance on Section 925 is plainly inconsistent with the nature of the phantom stock benefit he agreed to and the language of the PSU Agreement and Plan. The PSU Agreement states that the PSUs (1) were "a matter of separate agreement and not in lieu of salary or any other compensation" and (2) "shall not be includable as compensation or earnings for purposes of [any] benefit plan or other arrangement." The Plan states that the purpose of awarding employees PSUs as "additional compensation" was to further "incentivize" them.  In short, Plaintiff was not required to agree to the PSU Agreement or the Plan's forum selection clause as a "condition of employment," and thus Section 925 is plainly inapplicable.

Third, public interest factors[2] do not compel the invalidation of the parties' contractually agreed upon forum.  Wyoming is a natural forum for this dispute because the PSA Agreement requires the application of Wyoming law, and because IOG is incorporated there.  Plaintiff now lives in Texas and thus no longer lives in California.  This is not the unusual case where enforcement of the parties' contractually agreed upon forum would be unjust, unfair, or contrary to public policy. The Court will enforce the forum selection clause.  If Plaintiff is to obtain relief related to the PSUs—the gravamen of his complaint in this action—the appropriate forum is where the parties contractually agreed to litigate claims related to the PSUs: Wyoming state court.

However, the Court will not dismiss counts three, four, five, nine, and eleven(e) and (f) because those claims do not "aris[e] out of or relat[e] to the Plan," and thus

---

[2]  Those factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981) (internal quotation marks and citation omitted).

they are not controlled by the forum selection clause. Counts one, two, six, seven, eight, ten, and eleven(a)-(d) clearly arise out of and relate to the Plan and thus will be dismissed.

## CONCLUSION

For the reasons stated, Plaintiff's motion to remand is denied. (ECF No. 10). Defendants' motion to change venue is treated as a motion to dismiss and granted in part. (ECF No. 4). Counts one, two, six, seven, eight, ten, and eleven(a)-(d) are dismissed without prejudice under the PSU Agreement and the Plan's forum selection clause. Plaintiff's motions to strike and preclude consideration are denied. (ECF Nos. 10(2) & 24). No later than May 28, 2026, Plaintiff must file a statement indicating whether he wishes to proceed on the remaining claims in this Court or whether he wishes to voluntarily dismiss them. The parties may stipulate to the entire action proceeding in the United States District Court for the District of Wyoming, in which case the Court will vacate the dismissals and transfer the case.

**IT IS SO ORDERED**.

Dated:  May 14, 2026

_____
Honorable Barry Ted Moskowitz
United States District Judge

9